**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BELMONT CONDOMINIUM ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARROWPOINT CAPITAL CORPORATION, ROYAL SURPLUS LINES INSURANCE COMPANY, ROYAL & SUN ALLIANCE INSURANCE COMPANY, NATIONAL INDEMNITY COMPANY, WATERFRONT MANAGEMENT CORPORATION, a New Jersey Corporation; COMMERCE CONSTRUCTION MANAGEMENT, LLC, a New Jersey Limited Liability Company; and JOHN DOES 1–15 (Names being fictitious), <br><br> Defendants. | **OPINION** <br><br> Civ. No. 11-02900 (WHW) |

**Walls, Senior District Judge**

Plaintiff Belmont Condominium Association, Inc. ("Belmont") first filed the present action in the Superior Court of New Jersey, Law Division, Hudson County. Defendants Arrowpoint Capital Corp., Arrowpoint Group, Inc., and Arrowood Surplus Lines Insurance Company, with the consent of the defendant National Indemnity Company, removed the action to this Court pursuant to 28 U.S.C. § 1446(a). Belmont now moves to remand the case to the Superior Court of New Jersey pursuant to 28 U.S.C. §1447(c) for lack of subject matter jurisdiction. The removing defendants argue that this Court has jurisdiction under 28 U.S.C. § 1332 because separate claims against non-diverse defendants Commerce Construction Management LLC ("Commerce") and Waterfront Management Corporation ("Waterfront") were

1

**NOT FOR PUBLICATION**

fraudulently joined. The Court grants Belmont's motion to remand because the claim against Commerce was not fraudulently joined.

## FACTUAL AND PROCEDURAL BACKGROUND

Belmont is an association of owners of condominium units in the Belmont condominium building at 711 Clinton Street in Hoboken, New Jersey. Compl. ¶ 8. This litigation arises from a series of disputes regarding the construction and management of this building. Belmont brought an initial lawsuit in 2007 in the Superior Court of New Jersey ("Belmont I") that resulted in part in a judgment against the building's sponsor and developer Monroe Station Associates LLC ("Monroe"). Id. ¶¶ 21–23. On April 1, 2011, Belmont brought the present action in the Superior Court of New Jersey against several out-of-state insurance companies which Belmont argues are liable for the judgment against Monroe in Belmont I. Id. ¶¶ 55–69. Belmont also reasserts separate breach of contract claims against the building's in-state construction and management companies that were dismissed or severed from Belmont I. Id. ¶¶ 70–79.

Throughout the litigation, Belmont's primary allegations have been that faulty construction caused a water leak resulting in a toxic mold condition in the condominium building. In Belmont I, Belmont claimed in part that the toxic mold growth was due to the negligence of the sponsor / developer Monroe and several other defendants. Compl. ¶¶ 21–22. See Declaration of Kevin E. Wolff, Esq. in Opp. to Mot. to Remand ("Wolff Decl.") Ex. C. After a jury returned a verdict against Monroe on these toxic mold claims, the court entered a final judgment in the amount of $7,236,677 on December 10, 2010. Compl. ¶¶ 22–23. Based on general commercial liability insurance policies Monroe allegedly purchased to cover the construction of the building, Belmont now sues out-of-state insurance companies Arrowpoint Capital Corp., Arrowpoint Group, Inc., Arrowood Surplus Lines Insurance Company (formerly Royal Surplus Lines Insurance Company), and National Indemnity Company (collectively the

2

"Insurers"). Id. ¶¶ 9–13, 16–20. Belmont, acting as assignee of Monroe, seeks a declaratory judgment that the Insurers are liable to pay the full amount of the final judgment against Monroe in Belmont I and brings a related breach of contract claim. Id. ¶¶ 56–61. Belmont also claims that the Insurers acted in bad faith and breached their fiduciary duties by failing to settle the claims in Belmont I. Id. ¶¶ 62–69.

In addition to the toxic mold claims, Belmont brings a separate breach of contract claim against defendant Commerce, which served as the building's construction company. Id. ¶ 15. Belmont alleges that Commerce did not return certain parking spaces at the end of the construction period and has failed to pay assessments owed on those parking spaces. Id. ¶¶ 70–73. The parking space claim in Belmont I was voluntarily dismissed without prejudice after the trial on August 18, 2010, when other claims against Commerce were dismissed with prejudice. Id. ¶ 72. See Certification of Eileen A. Lindsay, Esq. ("Lindsay Cert.") Exs. L–M. Belmont reasserts the claim against Commerce in the present action.

Belmont also brings a separate breach of contract claim against defendant Waterfront, which served as the managing agent for the building. Compl. ¶ 14. Belmont alleges that Waterfront breached its management agreement by failing to oversee the proper management of the building and ensure that the building was properly insured. Id. ¶¶ 76–79. The claims against Waterfront in Belmont I were severed from trial on August 18, 2010. Id. ¶ 75. See Lindsay Cert. Ex. N. Although Belmont reasserts the breach of contract claim here, Belmont does not argue that this claim was ever formally dismissed in Belmont I or consolidated with the present action.

On May 20, 2011, Arrowpoint Capital Corp., Arrowpoint Group, Inc., and Arrowood Surplus Lines Insurance Company, with the consent of the defendant National Indemnity Company, removed the present action from the Superior Court of New Jersey. On June 17, 2011,

**NOT FOR PUBLICATION**

Belmont filed a motion to remand. The removing defendants opposed the motion for remand on July 5, 2011. This motion is decided without oral argument pursuant to Fed. R. Civ. P. 78(b).

## STANDARD OF REVIEW

Under 28 U.S.C. § 1446, a defendant may remove a case from state court to federal district court. The federal court must remand under 28 U.S.C. §1447(c) if it determines at any time that it lacks subject matter jurisdiction over the case. When confronted with a motion to remand, the defendant bears the burden of establishing the propriety of the removal and that subject matter jurisdiction exists. Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). Moreover, "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." Id. (citations omitted).

Where federal subject matter jurisdiction justifying removal is based on 28 U.S.C. § 1332, the removing party must demonstrate complete diversity of citizenship and an amount in controversy greater than $75,000. If the case includes a non-diverse defendant, the removing party "may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992). Joinder is considered fraudulent where the plaintiff has (1) "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant," or (2) "no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Boyer, 913 F.2d at 111 (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985)). The removing party carries a "heavy burden of persuasion" in showing that non-diverse parties were fraudulently joined. Batoff, 977 F.2d at 851.

## DISCUSSION

The parties here fail to satisfy the complete diversity of citizenship requirement for federal subject matter jurisdiction under 28 U.S.C. § 1332. To meet this requirement, the plaintiff

4

**NOT FOR PUBLICATION**

may not be a citizen of the same state as any defendant. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Under 28 U.S.C. § 1332(c), a corporation is deemed to be a citizen of both the state of incorporation and the state of its principal place of business. The plaintiff Belmont is a citizen of New Jersey because it is a New Jersey corporation with its principal place of business in New Jersey. Notice of Removal ¶ 18. The parties do not dispute that all of the Insurers are diverse defendants. Arrowpoint Capital Corp., Arrowpoint Group, Inc., and Arrowood Surplus Lines Insurance Company (formerly Royal Surplus Lines Insurance Company) are incorporated in Delaware and have principal places of business in North Carolina. Id. ¶¶ 19–22. National Indemnity Company is a Nebraska corporation with its principal place of business in Nebraska. Id. ¶ 23. Instead, complete diversity fails because Waterfront and Commerce are citizens of New Jersey. Both are incorporated in New Jersey with their principal places of business in New Jersey. Id. ¶¶ 14, 16.

Because of this lack of complete diversity, federal subject matter jurisdiction would only exist and removal would only have been appropriate if the claims against both Waterfront and Commerce were fraudulently joined. The removing defendants here fail to meet the heavy burden of persuasion necessary to show that both non-diverse defendants are fraudulently joined. Based on a determination that Commerce was not fraudulently joined, this Court finds that it lacks subject matter jurisdiction under 28 U.S.C. § 1332 and will remand the case to the Superior Court of New Jersey, Law Division, Hudson County.

**I.   Fraudulent Joinder of Commerce**

The removing defendants contend that Belmont's parking space claim against Commerce was fraudulently joined with the claims against the Insurers in order to destroy diversity and prevent successful removal. Notice of Removal ¶ 14. The removing parties first argue that there is no reasonable basis in fact or colorable ground for this claim because it is barred by the

applicable statute of limitations and judicial estoppel. Opp. to Mot. to Remand 10–16. The removing defendants also argue that Belmont does not have a real intention in good faith to prosecute the parking space claim against Commerce based on its failure to fully litigate this cause of action in Belmont I. Id. at 16–17. Finally, the removing defendants argue that this Court should adopt procedural misjoinder as an alternative basis for fraudulent joinder and find that Commerce was egregiously misjoined under permissive joinder rules. Id. at 17–18.

### A.  No Reasonable Basis in Fact or Colorable Ground for the Claim

As said, the removing party bears a substantial burden to demonstrate that there is no reasonable basis in fact or colorable ground for a claim against a non-diverse defendant. Only if the claim is "wholly insubstantial and frivolous" will joinder be considered fraudulent. Batoff, 977 F.2d at 852 (citing Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989)). The court "must assume as true all factual allegations of the complaint" and resolve uncertainties as to "controlling substantive law in favor of the plaintiff." Id. at 851–52. The Third Circuit has emphasized that where "there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer, 913 F.2d at 111.

#### i.  Statute of Limitations Defense

The removing defendants first argue unsuccessfully that the parking space claim against Commerce is barred by the applicable statute of limitations. A claim for which the statute of limitations has expired is considered wholly insubstantial and frivolous for the purposes of fraudulent joinder. The Third Circuit has explained that "[i]f a district court can discern, as a matter of law, that a cause of action is time-barred under state law, it follows that the cause fails to present even a colorable claim against the non-diverse defendant." In re Briscoe, 448 F.3d 201, 219 (3d. Cir. 2006). Where the application of the statute of limitations depends on a factual

**NOT FOR PUBLICATION**

determination, the court must accept as true all of the facts alleged by the plaintiff but may also make "a limited consideration of reliable evidence" outside the pleadings as long as the determination does not "risk crossing the line between a proper threshold jurisdictional inquiry and an improper decision on the merits." Id. at 219–20. The court may consider evidence in "the record from prior proceedings, which firmly establishes the accrual date for the plaintiff's claim, or in other relevant matters that are properly subject to judicial notice." Id.

The general statute of limitations in New Jersey for a breach of contract claim is six years. The statute provides that a cause of action "for recovery upon a contractual claim or liability, express or implied, . . . shall be commenced within 6 years next after the cause of any such action shall have accrued." N.J. Stat. Ann. § 2A:14-1 (2011). The date of accrual is typically "the date on which the right to institute and maintain a suit first arose." Rosenau v. City of New Brunswick, 238 A.2d 169, 172 (N.J. 1968). To determine when a cause of action accrues in a breach of contract action, "the relevant question is when did the party seeking to bring the action have an enforceable right." Metromedia Co. v. Hartz Mountain Assoc., 655 A.2d 1379, 1381 (N.J. 1995) (citation omitted). In a breach of contract action, the date of accrual of an enforceable right is tied to the date that the defendant breached the contract.

The application of the statute of limitations defense to Belmont's breach of contract claim against Commerce depends on the nature of the alleged contract and the date of the breach. Belmont specifically alleges in the complaint only that "Belmont has been and continues to be damaged by Commerce's failure to pay the Belmont amounts owed in connection with the parking spaces, which, under New Jersey condominium law, should have been converted to ownership by the Belmont or a unit owner at the Belmont shortly after all units at the Belmont had been sold." Compl. ¶ 73. The removing defendants argue that the statute of limitations has expired because this language suggests that a breach could have occurred only at the time

**NOT FOR PUBLICATION**

Commerce was required to return the parking spaces. Opp. to Mot. to Remand 13–14. Based on a news article suggesting that all units in the building were sold before March 26, 2000, they conclude that the cause of action necessarily accrued more than six years before the complaint was filed. Id. Belmont does not dispute that the failure to return the parking spaces initially occurred before the limitations period. Belmont instead argues that the claim accrued within the limitations period when Commerce stopped paying assessments on the parking spaces in 2006. Mot. to Remand 37.[1] Belmont's allegations find support in the removing defendants' own suggestion that Commerce previously paid assessments on the parking spaces but stopped paying these assessments in 2006. Opp. to Mot. to Remand 15–16.

If Belmont can demonstrate that Commerce breached a contractual obligation to pay assessments for the parking spaces and that Commerce breached the contract when it stopped paying assessments, then the statute of limitations would not bar a claim for recovery of unpaid assessments due after the start of the limitations period on April 1, 2005. Assuming all of Belmont's allegations to be true and resolving all uncertainties in controlling law in its favor, this claim meets the low threshold for finding that the claim is not wholly insubstantial and frivolous. To repeat, the Third Circuit has directed that a claim should not be found wholly insubstantial

---

[1] Belmont separately contends that Commerce still has possession of the parking spaces and that "each day's continuance of that retention is a new breach." Mot. to Remand 36. (citing Ballantyne House Assoc. v. City of Newark, 635 A.2d 551, 555–56 (N.J. App. Div. 1993)). Although the party may continue to suffer damages as a result of a single breach, these ongoing damages typically have no effect on the limitations period. The cited cases provide little support for applying any exception here. The doctrine maintains only that where a party breaches a contract with divisible installment-type payment requirements, a separate cause of action is deemed to accrue with each missed installment until the breaching party repudiates the contract. See Metromedia Co., 655 A.2d at 1381. A new limitations period "begins to run against each installment as that installment falls due" even if the initial breach predated the initial limitations period. County of Morris v. Fauver, 707 A.2d 958, 971 (N.J. 1998). The alleged contract here may have required payment of assessments in installments, but this doctrine would be irrelevant to the statute of limitations analysis because the first alleged missed payment in 2006 was within the limitations period.

**NOT FOR PUBLICATION**

and frivolous where there is "even a possibility that a state court would find that the complaint states a cause of action." Boyer, 913 F.2d at 111. Although Belmont may ultimately be unpersuasive in arguing that Commerce had a contractual obligation to pay assessments on the parking spaces that it breached after April 1, 2005, the claim survives scrutiny here because there is at least the possibility that it could survive a motion to dismiss in the state court.[2]

A contrary finding at this stage that the parking space claim is barred by the statute of limitations would be inappropriate because it would require factual determinations bearing on the merits of the claim. The Third Circuit has emphasized that while a court has some latitude in resolving limited questions of fact bearing on threshold jurisdictional questions only, a court should not undertake an inquiry into the merits of the underlying claim. Boyer, 913 F.2d at 112; Batoff, 977 F.2d at 852. In Briscoe, the court found that the statute of limitations on product liability claims had not been tolled based on newspaper articles demonstrating notice of the claims and an evidentiary finding in earlier proceedings that the injuries suffered were not latent. In re Briscoe, 448 F.3d at 222–24. Any determination now that the claims were barred by the statute of limitations would require a much different factual finding that any alleged breach occurred, if at all, prior to the limitations period. This could not be resolved based on "a limited consideration of reliable evidence" alone, but would require a more searching inquiry that would cross "the line between a proper threshold jurisdictional inquiry and an improper decision on the merits." Id. at 219–20.

---

[2] The removing defendants argue that any breach of contract claim predicated on Commerce's failure to pay assessments on the parking spaces would be precluded by the entire controversy doctrine under N.J. R. 4:30A because it was not raised and preserved in Belmont I. Opp. to Mot. to Remand 15–16. Belmont responds that the demand for compensatory damages in the earlier parking space claim in Belmont I incorporated the claim for unpaid assessments. Reply to Mot. to Remand 11. The removing defendants' argument fails because the state court could reasonably agree that the parking space claim dismissed without prejudice in Belmont I encompassed the parking space claim for unpaid assessments asserted here.

**NOT FOR PUBLICATION**

Alternatively, if the breach is deemed to occur when Commerce allegedly failed to return the parking spaces, Belmont argues that Commerce waived the statute of limitations defense. Belmont insists that Dean Geibel, as principal of Commerce, provided an express waiver of this defense that was bargained for as "part of the overall negotiations that resulted in Geibel's assigning all policy rights against the Insurers to the Belmont and Belmont's agreement to drop its appeal against Geibel personally." Reply to Mot. to Remand 12. Because Belmont first raises this argument on reply, the Court will consider it on a limited basis only as further support for the determination that resolving the statute of limitations question at this stage would not be appropriate. Determining whether Dean Giebel appropriately waived Commerce's statute of limitations defense would ultimately require a factual inquiry into the circumstances of the negotiations and the terms of the settlement that would reach beyond a threshold jurisdictional review of evidence on the record in prior proceedings or public sources suitable for judicial notice. See In re Briscoe, 448 F.3d at 219–20.

### ii. Judicial Estoppel Defense

The removing defendants also unsuccessfully argue that Belmont does not have a colorable ground for the parking space claim against Commerce because it is barred under the doctrine of judicial estoppel. Opp. to Mot. to Remand 10–11. The doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988). A position taken or a representation made by counsel in a legal brief may form the basis for judicial estoppel. See Lewandowski v. Nat'l R.R. Passenger Corp., 882 F.2d 815, 819 (3d Cir. 1989).

The removing defendants insist that Belmont is precluded from bringing a breach of contract claim as a result of its earlier assertion in Belmont I that "Belmont has no contract with

10

Commerce Construction," a statement made in a letter brief opposing summary judgment on a different claim. Opp. to Mot. to Remand 10–11 (citing Wolff Decl. Ex. I, at 11). Even assuming that the equitable doctrine of judicial estoppel could be a valid basis for finding that a claim is wholly insubstantial and frivolous for purposes of fraudulent joinder, the removing defendants' argument here is unpersuasive. Although on its face Belmont's statement might appear to be inconsistent with a breach of contract claim, it must be read in context. Belmont made this statement while arguing that the economic loss doctrine should not apply to bar the tort claims that Belmont asserted against Commerce related to the allegedly faulty construction of the Belmont building. Wolff Decl. Ex. I, at 10–12. Because Belmont did not represent that the building association (or the individual unit owners) did not have a contract with Commerce specifically related to the parking spaces and the assessments on those spaces, the state court could reasonably find that the statement is not inconsistent with its breach of contract claim for the parking spaces. It follows that Belmont's parking space claim against Commerce is neither wholly insubstantial nor frivolous for purposes of fraudulent joinder.

### B.  No Real Intention in Good Faith to Prosecute

The removing defendants also contend that the motion to remand should be denied because Belmont has no real intention in good faith to prosecute the parking space claim against Commerce. Notice of Removal ¶ 16. In assessing this ground for fraudulent joinder, a court must "look beyond" the complaint at the plaintiff's conduct to determine whether it is consistent with "a subjective intent to proceed" against the non-diverse parties. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985). The removing defendants argue that Belmont's conduct is inconsistent with a good faith intention to prosecute the parking space claim because Belmont already failed to fully litigate its claim in Belmont I. Opp. to Mot. to Remand 16–17. They explain that the claims against Commerce were only dismissed after the close of evidence at trial

11

**NOT FOR PUBLICATION**

when Belmont had failed to introduce any evidence related to the parking space claim. Id. at 17. Belmont responds that Belmont I instead demonstrates a good faith intention to prosecute the claims against non-diverse defendants because it actively pursued the claim against Commerce until it was dismissed. Mot. to Remand 39–40.

Belmont's conduct here overall has been consistent with a good faith intention to prosecute the parking space claim, even if it may not have pursued the claim as vigorously as it could have in earlier litigation. Belmont's failure to fully litigate the claim at trial in Belmont I does not reflect the lack of a good faith intention to prosecute the claim either in Belmont I or in the present action. Notably, Belmont's motive for first asserting the parking space claim could not have been to destroy diversity jurisdiction because it first raised this claim as part of a larger suit against Commerce, Waterfront, and other non-diverse defendants in Belmont I. Belmont also reserved its right to bring the claim in a future action by deliberately arguing for dismissal of the claim without prejudice in Belmont I and promptly reasserted the claim along with another unresolved claim against Waterfront in the present action.

### C. Procedural Misjoinder

Alternatively, the removing defendants encourage this Court to adopt procedural misjoinder as an additional ground for finding fraudulent joinder and deny the motion to remand on this basis. This argument relies on caselaw originating in the Eleventh Circuit that "egregious" misjoinder of defendants can be grounds for finding fraudulent joinder. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 2000). The Third Circuit has not directly considered the procedural misjoinder doctrine, but the cases in this district to address the issue have explicitly declined to adopt it. Kaufman v. Allstate Ins. Co., No. 07-cv-6160, 2010 WL 2674130, at *7–8 (D.N.J. June 30, 2010) (declining to follow Tapscott based on concerns over widespread uncertainty regarding acceptance of the doctrine and confusion applying the

**NOT FOR PUBLICATION**

appropriate standard); Reuter v. Medtronics, Inc., No. 10-cv-3019, 2010 WL 4628439, at *3–4 (D.N.J. Nov. 5, 2010) (noting that "other circuits have acknowledged fraudulent misjoinder in the wake of Tapscott, but few have formally adopted the principle"), adopted by, 2010 WL 4902662 (D.N.J. Nov. 23, 2010). In the Third Circuit, only the Eastern District of Pennsylvania has tentatively adopted the procedural misjoinder doctrine. See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig., 294 F. Supp. 2d 667, 673 (E.D. Pa. 2003); In re Avandia Mktg, Sales Practices & Prod. Liab. Litig., 624 F. Supp. 2d 396, 412–13 (E.D. Pa. 2009).

      This Court declines to include procedural misjoinder as an alternative ground for fraudulent joinder. The Third Circuit has emphasized that the fraudulent joinder doctrine should be interpreted narrowly in favor of remand. Batoff, 977 F.2d at 851; Boyer, 913 F.2d at 111. As recently as 2006, the Third Circuit reiterated that it has recognized only two grounds for finding fraudulent joinder. In re Briscoe, 448 F.3d at 216. Absent direct guidance from the Third Circuit that procedural misjoinder should be incorporated in the fraudulent joinder analysis, the Court finds that any question of whether defendants were procedurally misjoined would be more appropriately decided by the state court in which it was first filed.

      Even if this Court were to adopt procedural misjoinder as a basis for fraudulent joinder, the removing defendants have offered no convincing argument that the claims were egregiously misjoined. Without delving too deeply into the analysis, this Court finds that a New Jersey state court applying permissive joinder rules could find that Belmont's joinder was not egregious. The Court applies state rather than federal joinder law, consistent with the majority of the courts to have applied this doctrine. See In re Diet Drugs, 294 F. Supp. 2d at 673 (reasoning that "if the joinder of multiple plaintiffs is not improper under state law, it cannot be deemed a fraudulent or egregious effort to avoid federal jurisdiction"). New Jersey's rules on permissive joinder allow

13

**NOT FOR PUBLICATION**

defendants to be joined where (1) the claims arise "out of or in respect of the same transaction, occurrence, or series of transactions or occurrences" and (2) proof of these claims "involves any question of law or fact common to all of them." N.J. R. 4:29-1(a). See MacNeil v. Klein, 358 A.2d 488, 495–96 (N.J. Super. Ct. App. Div. 1976). Belmont reasonably argues that the claims against Commerce and the Insurers are not egregiously misjoined because the parking space and insurance claims both arise from the construction and management of the Belmont condominium building and will require proof of common facts and the testimony of common witnesses. Reply to Mot. to Remand 16–17. To support its argument, Belmont insists that its claims against the Insurers include allegations of their bad faith failure to settle the claim against Commerce. Id. at 17. Although the state court may later find that Commerce was improperly joined, the Court at this stage finds only that Commerce was not egregiously misjoined.

## II.   Fraudulent Joinder of Waterfront

The removing defendants also contend that Belmont's breach of contract claim against Waterfront was fraudulently joined with the claims against the Insurers to destroy diversity. Notice of Removal ¶ 16. The removing defendants argue that there is no reasonable basis in fact or colorable ground for this claim because it is still pending before the court in Belmont I and would otherwise be barred by the applicable statute of limitations. Opp. to Mot. to Remand 18–20. The removing parties also contend that Belmont has no intent in good faith to prosecute the claim against Waterfront because Belmont consented to severing this claim during trial and did not continue to pursue the claim after severance. Id. at 20. Finally, the removing defendants reiterate that the Court should adopt procedural misjoinder as an alternative ground for fraudulent joinder and contend that the claim against Waterfront was egregiously misjoined with the claims against the Insurers. Id. at 20–21.

**NOT FOR PUBLICATION**

The Court need not reach the question of whether Waterfront was fraudulently joined. To deny a motion for remand on the basis of fraudulent joinder, a district court must satisfy federal subject matter jurisdiction under 28 U.S.C. § 1332 by finding complete diversity of citizenship because all non-diverse defendants were fraudulently joined. If the district court finds that "any one of the resident defendants" is not fraudulently joined, then it "must find that joinder was proper and remand the case to state court." Boyer, 913 F.2d at 111. Because the Court has already found that the non-diverse defendant Commerce was not fraudulently joined, the Court cannot find that complete diversity exists. Further consideration of the claim against non-diverse defendant Waterfront is unnecessary.

## CONCLUSION

Because the Court finds that it lacks federal subject matter jurisdiction under 28 U.S.C. § 1332, Belmont's motion, pursuant to 28 U.S.C. §1447(c), to remand this case to the Superior Court of New Jersey, Hudson County, Law Division is granted.

December 20, 2011

/**s**/ **William H. Walls**
United States Senior District Judge